**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**TODD BONDS**                                                                          **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 3:16CV-P724-JHM**

**DANIEL OLDAKER LPN** *et al*.                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Todd Bonds filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1),

which is before the Court for initial review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons

that follow, a portion of the claims will be dismissed and the remaining claims will proceed.

## I. SUMMARY OF CLAIMS

Plaintiff's complaint concerns his detention at the Luther Luckett Correctional Complex

(LLCC). He is no longer incarcerated. He brings this action against the following seven

Defendants in their individual and official capacities: (1) Nurse Daniel Oldaker, LPN, employed

by Correct Care Solutions (CCS); (2) Nurse Shierra Brown, LPN, employed by CCS; (3) Nurse

Dawn Patterson, RN, employed by CCS; (4) CCS, an agency that provides medical assistance to

inmates at LLCC; (5) the Kentucky Department of Corrections (KDOC); (6) LLCC; and

(7) LLCC Sgt. Shawn Carmin.

In the complaint, Plaintiff alleges that on July 13, 2016, he was sent to LLCC's Restricted

Housing Unit (RHU) "for allegedly using rude language to another unnamed corrections

employee." He reports that when an inmate is sent to that unit, a medical examination is

performed by CCS nurses. Plaintiff claims that "it was widely known that [he] had high blood

pressure while he was committed to the 'DOC.'" He states that Defendant Nurse Brown took his

vitals as part of the RHU procedures; that during the evaluation, his blood pressure "reached

dangerous emergency levels of at least 225/123"; that he reported being "dizzy and weak" during that evaluation; and that Defendant Nurse Brown "purposely and maliciously record[ed] false readings that weren't significant such as 139/95." Plaintiff reports that Defendant Nurse Brown wrote down the proper reading once Plaintiff called a prison guard for help and that the prison guard called for another nurse to assist Defendant Nurse Brown.

Plaintiff states that Defendant Nurse Oldaker arrived on the scene, at which time Defendant Nurse Brown left. He claims that Defendant Nurse Oldaker "was obviously perturbed by the events that were unfolding and told [Plaintiff] that his blood pressure always runs high." Plaintiff further claims that Defendant Nurse Oldaker told him that he "was 'Super Nigger' and could handle the high blood pressure since his blood pressure was always high." Plaintiff claims that he "was incensed at 'Oldaker's' racial slur and lack of concern for his failing condition and asked, 'What kind of sh-t is that to say to someone?'" He claims that Oldaker "replied with 'Have a nice day' and left [him] ailing as [he] began to vomit and become weaker by the minute." Plaintiff alleges that he "never received hospitalization during this time or any medicines to lower his blood pressure such as Nitro pills."

Plaintiff reports that based on the foregoing exchange with Oldaker, he was written up for a charge of using disrespectful language to an employee and "charged for the infraction initiated by" Defendant Sgt. Carmin. In the attached disciplinary report, Defendant Nurse Brown indicated that during the pre-segregation medical evaluation, she got three high readings and conferred with Defendant Oldaker about it; that Plaintiff told Nurse Brown that he was feeling dizzy and was not able to walk; that when Nurse Oldaker went to inform Plaintiff of his propensity to have a high blood pressure, Plaintiff told Nurse Oldaker to "'f-ck off, you don't

know what you are talking about!'"; and that Nurse Oldaker told Plaintiff "to have a good evening and left [Plaintiff] in the holding cell, requiring no further medical attention at this time."

In the complaint, Plaintiff additionally alleges that on July 28, 2016, upon walking into the medical department for an appointment, he noticed "a sign that had his and nine other inmates' names on the white board with a sign that read, '(these inmates) sign in for Foot Assessment.'" Plaintiff alleges that this was a violation of his "medical privacy rights ([] 'HIPPA'); and his protected health information ([]'PHI') as anyone walking by this room with a clear window could; or anyone else in the waiting room could see what [Plaintiff] and the other inmates were there in the department for." Plaintiff alleges that he "got teased by several gay men asking to rub his feet, nearly causing an altercation between [him] and one of the men."

Plaintiff reports that he filed a grievance about the alleged privacy violation and that Defendant Nurse Patterson disagreed with Plaintiff at the informal resolution stage. He claims that because of this grievance, he "began to receive retaliatory behavior from the medical employees, most notably 'Brown' and "Patterson.'"

Plaintiff claims that during a medical appointment on September 14, 2016, Defendant Nurse Brown, who "was very combative and supercilious" and who knew Plaintiff had a documented fear of needles at Blackburn Correctional Complex, was drawing Plaintiff's blood and then "stopped drawing his blood for no apparent reason, other than to stick him again with the needle to terrorize [him]." Plaintiff states that he "again filed a grievance as clearly this was retaliation by 'Brown' as it was clear that [Plaintiff] was a marked man with an upcoming release due in late October/early November." Plaintiff claims that Defendant Nurse Patterson called him

to the medical department to discuss the grievance "and began to berate" him. Plaintiff states that he "immediately left the area fearing more retaliation from 'Patterson' and/or her cohorts and henchmen."

Plaintiff alleges violations of the First Amendment (retaliation), the Eighth Amendment (deliberate indifference to his high blood pressure), the Fourteenth Amendment (denial of equal protection), and violation of HIPAA (privacy violation).

As relief, Plaintiff seeks compensatory and punitive damages and various forms of injunctive relief.

## II. <u>STANDARD OF REVIEW</u>

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the complaint under 28 U.S.C. § 1915(e). *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  <u>ANALYSIS</u>

### A.  Injunctive Relief

An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to his release from confinement or transfer to another facility.  *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th

Cir. 1996) (same). Because Plaintiff is no longer incarcerated at LLCC, his claims for injunctive

relief are moot and will be dismissed.

## B. Damages

### 1. Claims Against KDOC and LLCC and
### Official-Capacity Claims Against Defendant Sgt. Carmin

The Eleventh Amendment[1] "bars all suits, whether for injunctive, declaratory or

monetary relief, against the state and its departments," *Thiokol Corp. v. Dep't of Treasury, State*

*of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993), unless Congress has validly abrogated

the state's immunity or the state has waived its immunity. *Nev. Dep't of Human Res. v. Hibbs*,

538 U.S. 721, 726 (2003); *Alabama v. Pugh*, 438 U.S. 78l, 782 (1978). The Commonwealth of

Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir.

2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign

immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern*

*v. Jordan*, 440 U.S. 332, 341 (1979)). The Eleventh Amendment, therefore, bars this § 1983

action against KDOC and LLCC.

"This [Eleventh Amendment] bar remains in effect when State officials are sued for

damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quoting

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Consequently,

the official-capacity claims for damages against Defendant LLCC Sgt. Carmin are barred by the

Eleventh Amendment.

---

[1] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the amendment does not address the possibility of suit against a state by one of its own citizens, unassailable case law has interpreted the amendment in such a way as to close that gap." *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

In addition, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the claims against LLCC and KDOC and the official-capacity claims against Defendant Sgt. Carmin are barred by the Eleventh Amendment and fail to state a claim upon which relief may be granted.

### 2. Claims Against CCS and Official-Capacity Claims Against Defendant Nurses Oldaker, Brown, and Patterson

The official-capacity claims against Defendants CCS Nurses Oldaker, Brown, and Patterson are actually against their employer, CCS. *See, e.g.*, *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 530841, at *5 (W.D. Ky. Feb. 11, 2013). "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). For purposes of initial review, the Court presumes that CCS is a state actor. However, a private corporation, like CCS, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, like a municipality, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the

policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

In the instant case, Plaintiff has not alleged that CCS's medical staff acted pursuant to a policy or custom in causing any alleged harm. Nothing in the complaint demonstrates that the action or inaction of any medical personnel occurred as a result of a policy or custom implemented or endorsed by CCS. The complaint, therefore, fails to establish a basis of liability against CCS. Consequently, the claims against CCS and the official-capacity claims against Defendants CCS Nurses Oldaker, Brown, and Patterson will be dismissed for failure to state a claim.

### 3. First Amendment

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* "Although the elements of a First Amendment retaliation claim [are] constant, the underlying concepts that they signify will vary with the setting—whether activity is protected or an action is adverse will depend on context." *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 388) (internal quotation marks omitted). The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Plaintiff meets the first element of a retaliation claim in that he was engaged in protected conduct by filing grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.").

As to the second element, Plaintiff claims that Defendant Nurse Brown needlessly stuck him with a needle a second time while drawing blood. The Court has a difficult time concluding that this conduct constituted an adverse action which would deter a person of ordinary firmness from filing grievances. *See Bell v. Johnson*, 308 F.3d at 606 ("[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted."). Nevertheless, even if the Court were to assume that Defendant Nurse Brown's conduct was an adverse action, the Court finds that Plaintiff fails to meet the third element of a retaliation claim; that is, he fails to allege facts showing a causal connection between filing a grievance and Nurse Brown's sticking him again with a needle. Review of the privacy grievance (the only grievance Plaintiff filed prior to Nurse Brown's taking of his blood) reveals that Plaintiff does not mention Nurse Brown in the grievance, that the grievance does not relate to her in any way, and that she did not respond to the grievance. Plaintiff states no facts indicating that Nurse Brown otherwise had any occasion to know about the grievance prior to the drawing of blood. Plaintiff merely makes a conclusory statement that he "clearly felt this was retaliation by 'Brown.'" *See Hardy v. Beckwith*, No. 06-CV-11856, 2006 WL 1195866, at *2 (E.D. Mich. May 3, 2006) ("Conclusory allegations of retaliatory motive 'with no concrete and relevant particulars' fail to state a claim upon which relief may be granted.") (citing *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing cases)).

As to Plaintiff's claim that Defendant Nurse Patterson berated him in retaliation for filing grievances, the Court finds that this did not constitute an adverse action. *See, e.g.*, *Wombles v. Ky. State Reformatory*, No. 3:09CV-P245-H, 2009 WL 3756998, at *4 (W.D. Ky. Nov. 9, 2009) ("Plaintiff's retaliation claim against Sims for harassing and berating him does not state a cognizable claim. Verbal harassment would not deter a person of ordinary firmness from engaging in protected conduct.") (citing *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003)).

For these reasons, Plaintiff's retaliation claims against Defendants Nurses Brown and Patterson will be dismissed for failure to state a claim upon which relief may be granted.

### 4. Eighth and Fourteenth Amendments

Plaintiff alleges that Defendants Nurses Brown and Oldaker were deliberately indifferent to a serious medical need, his high blood pressure, and that Defendant Nurse Oldaker discriminated against him/denied him medical treatment because of his race. **Upon consideration, the Court will allow these Eighth and Fourteenth Amendment individual-capacity claims to proceed for further development against Defendants Nurses Brown and Oldaker for damages**.

### 5. Privacy Claim

Plaintiff alleges a violation of the Health Information Portability and Accountability Act (HIPAA). Title II of HIPAA, the Health Insurance Portability and Accountability Act of 1996, codified at 42 U.S.C. § 1320a *et seq.*, was created to protect against the unauthorized disclosure of health records and information. *Gratton v. United Parcel Serv., Inc.,* No. CV 07–3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008). However, only the Secretary of the Department of Health and Human Services may file suit to enforce its provisions. 42 U.S.C. § 1320d-5(d);

*Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Private citizens have no standing to sue a covered entity for a violation of HIPAA. *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983); *see also Carpenter v. Phillips*, 419 F. App'x 658, 658 (7th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11–cv–170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011). Plaintiff, therefore, has failed to state a claim upon which relief may be granted under HIPAA.

### 6. Sgt. Carmin

Plaintiff alleges that he was written up for a charge of using disrespectful language to an employee and "charged for the infraction initiated by" Defendant Sgt. Carmin. This is the sole allegation against Defendant Sgt. Carmin, and the allegation fails to state a constitutional claim. Accordingly, the claim against Defendant Sgt. Carmin will be dismissed.

### IV. <u>ORDER</u>

For the foregoing reasons,

**IT IS ORDERED** that on initial review of the complaint, the following claims shall proceed: the **Eighth and Fourteenth Amendment individual-capacity claims against Defendants Nurses Brown and Oldaker for damages**. In permitting these claims to proceed, the Court passes no judgment on the merits and ultimate outcome of the action. A separate Order will be entered directing service on those Defendants.

**IT IS FURTHER ORDERED** that all other claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted and

pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) for seeking damages from Defendants immune from such relief.

As all claims against Defendants Nurse Patterson, CCS, KDOC, LLCC, and Sgt. Carmin are dismissed, the **Clerk of Court is DIRECTED to terminate** them from this action.

Date: May 4, 2017

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
       Defendants
       General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.005