UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO: 3:16-CV-00724-JHM

TODD BONDS                                                                                                    PLAINTIFF

V.

DANIEL OLDAKER, *et al.*                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. [DN 38]. Plaintiff failed to file a response to Defendants' Motion. Therefore, this matter is ripe for review. For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

Plaintiff, Todd Bonds, is a former inmate at Luther Luckett Correctional Complex ("LLCC"). According to the Complaint, on July 13, 2016, before being sent to the Restricted Housing Unit, Mr. Bonds received a medical examination by Nurses Daniel Oldaker and Shierra Brown. [DN 1 ¶ 10]. Mr. Bonds alleges that Nurse Brown incorrectly and maliciously recorded false blood pressure readings to ensure he would not receive necessary medical treatment—Mr. Bonds claims his blood pressure reached "levels of at least 225/123" and that Nurse Brown recorded readings "such as 139/95." [*Id.* ¶¶ 12–13]. In response, Mr. Bonds states that he called for assistance and Nurse Oldaker responded. [*Id.* ¶¶ 13–14]. Next, Mr. Bonds alleges that Nurse Oldaker, frustrated with the situation, referred to him by a racial epithet and told him that his blood pressure was normal for him. [*Id.* ¶ 15]. Mr. Bonds states that he did not receive medical assistance at that time, and because his blood pressure was so high, he began to vomit. [*Id.* ¶ 16].

On November 16, 2016, Mr. Bonds filed a civil action against several defendants—Nurses Daniel Oldaker, Shierra Brown, and Dawn Patterson of Correct Care Solutions, Correct Care

Solutions ("CCS"), the Kentucky Department of Corrections, LLCC, and Corrections Employee Sergeant Shawn Carmin. [DN 1]. The Complaint was based on three specific incidents during which Mr. Bonds came into contact with the medical staff at LLCC. After an initial screening review pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed all of Mr. Bonds' claims with the exception of the Eighth and Fourteenth Amendment individual-capacity claims against Nurses Oldaker and Brown. [DN 5]. These claims pertain to the above detailed incident that occurred on July 13, 2016.

The Defendants now move the Court to grant summary judgment in their favor. [DN 38]. Mr. Bonds did not respond in a timely fashion, so the Court issued an order stating that if Mr. Bonds wished to file a response to the instant Motion for Summary Judgment, he must file a motion for leave to file a late response and attach his proposed reply within fifteen days of the order. [DN 42]. Mr. Bonds failed to file either a motion for leave to file a late response or a response to the pending motion.

## II. STANDARD OF REVIEW AND LAW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Bonds' Failure to Respond

Mr. Bonds failed to respond to the motion for summary judgment. According to Federal Rule of Civil Procedure 56(e), "a party who elects not to respond to a motion for summary judgment risks having judgment entered against them if the court finds it appropriate to do so." *Odom v. Pheral*, No. 5:12-CV-00073, 2015 WL 474318, at *4 (W.D. Ky. Feb. 4, 2015). "Even so, a district court may not grant summary judgment solely because the non-moving party has failed to . . . respond to the motion within the applicable time limit." *Id.* "'[T]he Federal Rules of Civil Procedure still require the moving party to demonstrate the absence of a disputed question of material fact and a ground that would entitle the moving party to judgment as a matter of law.'" *Id.* (quoting *Miller v. Shore Financial Services, Inc.*, 141 Fed. App'x 417, 419 (6th Cir. 2005)); *see also Smallwood v. United States*, No. 10-260, 2015 WL 770363, at *2 (E.D. Ky. Feb. 23, 2015).

However, "[i]t is standard practice that, where a non-moving party fails to respond to a moving party's motion, 'the Court may accept the truth of [the movant's] factual allegations, and determine whether [the movant is] entitled to summary judgment' on the basis of those accepted

3

facts." *Bailey v. Ingram*, No. 5:14-CV-279, 2018 WL 6112972, at *2 (E.D. Ky. July 26, 2018), report and recommendation adopted, 2018 WL 6112953 (E.D. Ky. Nov. 21, 2018) (quoting *Sheils v. Jordan*, 841 F. Supp. 2d 727, 729 (S.D.N.Y. 2012)). "In this context, 'the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Id.* (quoting *Byrd v. Brandeburg*, 922 F. Supp. 60, 62 (N.D. Ohio 1996)). That being the law, the Court accepts as true Defendants' factual allegations. It is only left to determine whether Defendants are entitled to summary judgment on the basis of those facts.

### B. Eighth Amendment Claim

Mr. Bonds' first cause of action is that Nurses Oldaker and Brown violated his Eighth Amendment rights by maliciously failing to treat his high blood pressure. [DN 1 ¶¶ 12–16, 26–29]. The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. An Eighth Amendment claim requires a plaintiff to prove two distinct components—one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," i.e., the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official must have been deliberately indifferent to the inmate's health or safety. *Id.*

High blood pressure can be a "sufficiently serious" medical need for purposes of a deliberate indifference claim. *See Hensley v. Dugger*, No. 2:13-CV-76-JRG-DHI, 2014 WL 6982397, at *4 (E.D. Tenn. Dec. 10, 2014) ("A prisoner's heart problems, high blood pressure, usage of a C-pap machine (presumably used to treat a breathing disorder such as sleep apnea), and bowel obstruction constitute serious medical needs.").

The second and subjective component of the *Farmer* test is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 Fed. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

Mr. Bonds' medical and disciplinary records lack any evidence that he suffered from a serious risk of harm of which Nurses Oldaker and Brown were subjectively aware—the hallmark of a deliberate indifference claim. According to Sixth Circuit case law, "where a 'deliberate indifference claim is based on a prison's failure to treat a condition adequately' or on 'a determination by medical personnel that medical treatment was unnecessary,' a plaintiff must 'place verifying medical evidence in the record to establish the detrimental effect of the delay in treatment.'" *Dulak v. Corizon Inc.*, No. 14-10193, 2015 WL 13741599, at *4 (E.D. Mich. July 10, 2015) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897–98 (6th Cir. 2004); *see also Browder v. Ankrom*, No. 4:05-CV-P9-M, 2006 WL 2051631, at *7 (W.D. Ky. July 20, 2006). A disciplinary record filed by Nurse Oldaker and submitted to the Court details that Mr. Bonds frequently had high blood pressure readings. Nurse Oldaker stated that Mr. Bonds "require[ed] no further medical attention at [the] time" despite the blood pressure readings. [DN 38-2 at 4]. The Court will not second-guess the judgment of the medical professionals who attended to Mr. Bonds and determined he did not require additional medical attention. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments . . . .").

A single disagreement over appropriate medical treatment between an inmate and prison medical staff alone cannot give rise to a claim for deliberate indifference. *Hudson v.* Grider, No. 3:18-CV-269, 2019 WL 252534, at *2 (W.D. Ky. Jan. 17, 2019) (citing *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996)). Instead, to defeat the movant's Motion for Summary Judgment as to this claim, Mr. Bonds needed to submit verified medical evidence showing the detrimental effect he suffered because of the determination that his blood pressure did not warrant immediate medical treatment. *See Dulak*, 2015 WL 13741599, at *4. Mr. Bonds' failed to submit any such evidence, and that failure is fatal to his Eighth Amendment claim. Nurses Oldaker and Brown are entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment as to Mr. Bonds' Eighth Amendment Claim is **GRANTED**.

### C. Fourteenth Amendment Claim

Mr. Bonds' second cause of action is a claim for violation of his Fourteenth Amendment rights. [DN 1 ¶¶ 30–33]. Specifically, he claims he received different medical treatment based on his race. The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan County Bd. Of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To establish such race-based discrimination, Mr. Bonds must prove that the alleged discrimination resulted in adverse treatment that differed from similarly situated individuals. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

The "threshold element of an equal protection claim is disparate treatment." *Mann v. Tabeling*, No. 14-CV-12762, 2015 WL 71848, at *2 (E.D. Mich. Jan. 6, 2015) (quoting *Scarbrough*, 470 F.3d at 260). This is where Mr. Bonds' claim fails. Accordingly, it is unnecessary to apply the strict scrutiny analysis warranted by race-based Fourteenth Amendment challenges.

Mr. Bonds claims that Nurse Oldaker said a racial epithet to him during treatment of his high blood pressure. Mr. Bonds produced no evidence to suppport that allegation. However, Nurse Oldaker submitted an affidavit stating that he never "utter[ed] a racial epithet, either directed towards Mr. Bonds or otherwise." [DN 38-4 ¶ 6]. Even so, "[t]he use of a racial epithet by itself is not an actionable violation of the Equal Protection Clause." *King v. City of Eastpointe*, 86 Fed. App'x 790, 814 (6th Cir. 2007) (citing *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000)). Instead, "[t]he use of racially discriminatory language can provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation." *Id.* Mr. Bonds does not even allege additional harassment, let alone provide evidence to that effect.

Mr. Bonds failed to produce evidence that either nurse provided disparate treatment to him as compared to similarly situated inmates based on race. Taking into consideration the medical records and disciplinary reports submitted by Nurses Oldaker and Brown, the Court accepts as true that Mr. Bonds' blood pressure on July 13, 2016, was high but in a normal range for him and that he required no further medical attention at the time. [DN 38-2 at 4; DN 40 at 5]. In view of the evidence before the court—the disciplinary and medical records submitted by Nurses Oldaker and Brown, Nurse Oldaker's affidavit, the lack of contradictory evidence, and the absence of a clear allegation as to disparate treatment—summary judgment is appropriate. Accordingly, the Motion

for Summary Judgment as to Mr. Bonds' claim for race-based discrimination in violation of the Fourteenth Amendment is **GRANTED**.

IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 38] is **GRANTED**.

Joseph H. McKinley Jr., District Judge
United States District Court

March 1, 2019

cc: counsel of record